## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**DALE C. WRIGHT,**

     **Petitioner,**

     **v.**

**ERNIE MOORE, WARDEN,**
**LEBANON CORRECTIONAL**
**INSTITUTION,**

     **Respondent.**

              **CASE NO. 2:13-CV-0881**
              **JUDGE MICHAEL H. WATSON**
              *Magistrate Judge Abel*

### REPORT AND RECOMMENDATION

Petitioner Dale C. Wright, a state prisoner, brings this action for a writ of habeas corpus under 28 U.S.C. § 2254.  This matter is before the Magistrate Judge on the petition, respondent's *Return of Writ,* petitioner's *Reply* and the exhibits of the parties.

This case involves Wright's convictions after a jury trial in the Muskingum County Court of Common Pleas for child endangering and murder.  The trial court imposed an aggregate prison term of fifteen years to life.  The Ohio Court of Appeals and Ohio Supreme Court denied petitioner's appeal.  Petitioner now asserts as his sole claim for relief in this timely filed § 2255 petition that the indictment against him was constitutionally and legally invalid.  For the reasons that follow, this Magistrate Judge concludes that this claim fails to provide a basis for federal habeas corpus relief and therefore **RECOMMENDS** that this action be **DISMISSED.**

**Facts and Procedural History**

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On August 1, 2010, Community Ambulance Services responded to a 9–1–1 call at 2148 East Pike that came in at approximately 12:17

1

a.m. The call came in as a "child not breathing". (T. at 201). Upon arriving at the scene, paramedic Robin Lynn Fisher and EMT Lynn Dalrymple found Appellant Dale Wright standing in the front yard holding five month old Dash Wright. (T. at 202). The medics took the infant from Appellant and confirmed that he was not breathing and had no pulse. (T. at 204). EMT Dalrymple recalled that as she was running to the squad with the baby, Appellant told her that the baby had vomited and that he had tried to give him a bath. (T. at 221–222).

Washington Township volunteer firefighters Casey Parrett and Adam Siddle also arrived on the scene. (T. at 205, 222). Firefighter Siddle drove the squad to Genesis Hospital while Firefighter Parrett assisted medics Fisher and Dalrymple with CPR. Id. Paramedic Phillip Koster also caught up with the ambulance and joined the medics to assist in treating the child. (T. at 231).

The squad arrived at the hospital at approximately 12:28 a.m. The child was still unresponsive, having showed no signs of life during the twelve minutes from when the squad arrived on the scene to when they arrived at the hospital. (T. at 225).

Fisher and Dalrymple stated that the child never left their sight during that time period and that at no time did they drop him or strike his head on anything. (T. at 215, 225). Koster also stated that from the time he got on the ambulance to when they arrived at the hospital, the child was never dropped, and he was never struck in the head. (T. at 233).

Upon arriving at the hospital, Dash was treated by Dr. Robert McCoy. (T. at 267–272). Dr. McCoy received a history regarding the patient's condition that was virtually identical to what Dep. Gearhart had received from the Defendant. Dr. McCoy conducted a thorough examination of Dash and ordered that Dash be administered epinephrine with the hope of generating a pulse. Dash also was being bagged as he was still not breathing on his own.

During the course of Dr. McCoy's examination, he discovered that the child had bleeding in the back of the eyes. This being a strong indicator of an abusive injury absent other traumatic explanation, Dr. McCoy contacted Children's Hospital and was advised that a CAT scan was necessary as well. Dr. McCoy's review of the CAT scan showed that there were multiple brain bleeds of varying age, as well as a skull fracture. Ultimately Dash was transferred to Children's Hospital in Columbus.

2

At Children's Hospital, Dash was examined and treated by a team of doctors, including several experts in the field of child abuse pediatrics, radiologists and an ophthalmologist. Dr. Farah Brink, an expert in the field of child abuse pediatrics, conducted a thorough physical examination of Dash, as well as reviewing the records provided by Genesis regarding Dash's treatment at that hospital. Dr. Brink noted that the child suffered from swelling of the brain, subdural bleeding within the brain, skull fractures and retinal hemorrhages. Dr. Brink's treatment of Dash included exploring any possible reasons for the existence of these injuries including accidental causes or preexisting conditions, but she found none. Dr. Brink testified that the injuries suffered by Dash Wright were the result of blunt impact trauma with a likely shaking mechanism. (T. at 483). Dr. Brink further testified that these types of injuries can occur in car accidents or high distance falls, but that the injuries Dash suffered were caused by the child's physical abuse. (T. at 490).

On August 3, 2010, Dash Wright was pronounced dead. Dr. Kenneth Gerston of the Franklin County Coroner's Office performed the autopsy in this case. Dr. Gerston concluded that Dash Wright's cause of death was homicide. In his report, Dr. Gerston noted that a child that suffers the type of injuries that Dash had would have had immediate onset of symptoms meaning that Dash would not have wanted to eat or play, nor would he have been giggling, happy and smiling after the injury. (T. at 376). Finally, Dr. Gerston testified that Dash's cause of death was traumatic brain injury caused by blunt force. (T. at 386).

While Dash was being treated at Children's Hospital, the Muskingum County Sheriff's Office conducted an investigation into Dash Wright's death which included interviews with the mother, Appellant, the coroner and medical personnel. Detectives also conducted a search of Appellant's residence on August 2, 2010.

As a result of such investigation, Appellant Dale C. Wright was indicted on one count of child endangering, in violation of R.C. § 2929.11(B)(1) and one count of murder, in violation of R.C. § 2903.02(B).

On January 14, 2011, Appellant filed a motion to suppress evidence.

On January 29, 2011, the trial court conducted a hearing on Appellant's motion to suppress.

3

On June 27, 2011, a jury trial commenced in this matter.

On June 29, 2011, the jury returned a guilty verdict on both counts as charged in the indictment.

On August 1, 2011, the trial court sentenced Appellant to fifteen (15) years to life.

Defendant–Appellant now appeals, assigning the following errors for review:

ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED IN NOT SUPPRESSING EVIDENCE [SIC] OBTAINED IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

"II. THE INDICTMENT WAS STRUCTURALLY INSUFFICIENT AND WAS IMPROPERLY AMENDED IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

"III. THE JUDGMENT WAS BASED ON INSUFFICIENT EVIDENCE IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

"IV. THE DEFENDANT–APPELLANT WAS DENIED A FAIR TRIAL BY THE ADMISSION OF INADMISSIBLE, IRRELEVANT AND PREJUDICIAL EVIDENCE IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

"V. THE DEFENDANT–APPELLANT WAS DENIED A FAIR TRIAL BY PROSECUTORIAL MISCONDUCT IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

"VI. THE JURY INSTRUCTIONS WERE STRUCTURALLY INSUFFICIENT IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

"VII. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE STATE/FEDERAL CONSTITUTIONS.

"VIII. THE DEFENDANT–APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

"IX. THE DEFENDANT WAS DENIED A FAIR TRIAL BY STRUCTURAL AND CUMULATIVE ERROR IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS."

*State v. Wright,* No. CT2011-0046, 2012 WL 1418078, at *1-3 (Ohio App. 5th Dist. April 23, 2012).  On April 23, 2012, the state appellate court affirmed the judgment of the trial court.  *Id.* On September 5, 2012, the Ohio Supreme Court dismissed petitioner's subsequent appeal.  *State v. Wrig*ht, 132 Ohio St.3d 1516 (2012).

On September 5, 2013, petitioner filed the  petition for a writ of habeas corpus now before the court.  He asserts, as his sole claim for federal habeas corpus relief that the indictment against him was constitutionally and jurisdictionally invalid (and invalid under Ohio law) and violated the Ex Post Facto Clause, because it failed to include the requisite *mens rea* of recklessness and because the state courts applied an Ohio Supreme Court case decided after commission of the crime alleged in denying his appeal.  *Petition*, PageID #3.  It is the position of the respondent that this claim lacks merit.

**Merits**

The Ohio Fifth District Court of Appeals rejected Wright's claim in relevant part as follows:

Appellant argues that the indictment was structurally insufficient. We disagree.

More specifically, Appellant argues that that element of "recklessness" was not contained in the indictment in either the murder or the child endangering count and, therefore, such indictment was deficient.

The Ohio Supreme Court has held that "[a]n indictment that charges an offense by tracking the language of the criminal statute

5

is not defective for failure to identify a culpable mental state when the statute itself fails to specify a mental state ." *State v. Horner*, 126 Ohio St.3d 466, 935 N.E.2d 26, 2010–Ohio–3830, at paragraph one of the syllabus.

Upon review, we find that the indictment in the case *sub judice* is not defective for failure to include a mens rea element for murder or child endangering because the indictment tracked the language of the Ohio Revised Code, which does not specify a *mens rea.*

Further, a review of the jury instructions in this matter reveals that the jury was properly instructed as to the recklessness element on these charges.

Based on the foregoing, we find Appellant's second Assignment of Error not well-taken and overrule same.

*State v. Wright*, 2012 WL 1418078, at *6.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of

> the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The United States Supreme Court has explained:

> "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant statecourt decision applied clearly established federal law erroneously or incorrectly.*" Id.,* at 411, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389. Rather, that application must be "objectively unreasonable." *Id*., at 409, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389. This distinction creates "a substantially higher threshold" for obtaining relief than *de novo* review. *Schriro v. Landrigan,* 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings*,"* Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.*2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) ( *per curiam* ).

*Renico v. Lett*, 550 U.S. 766, ——, 130 S.Ct. 1855,1862 (2010) (footnote omitted.)

> "[C]learly established" law under § 2254(d)(1) consists of "the holdings, as opposed to the *dicta*, of [the Supreme Court's]" cases. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389, (2000). An "unreasonable application" of that law involves not just an erroneous or incorrect decision, but an objectively unreasonable one. *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010).

*Wong v. Smith,* —— U.S. ——, 131 S.Ct. 10 (Nov. 1, 2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as " 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, ——U.S. ——, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Petitioner has failed to meet this standard here.

Preliminarily, to the extent that petitioner asserts the alleged violation of state law, the claim fails to provide a basis for relief in these proceedings.  Issues of state law fail to warrant federal habeas corpus relief. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 988). " '[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure' " in considering a habeas petition. Id. (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir.1985)). It is only where an error resulted in the denial of fundamental fairness will habeas relief be granted. Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988).

Petitioner does raise a federal constitutional claim.  He asserts that the indictment is constitutionally invalid because it does not contain a necessary element of the offense of child endangering, *i.e.*, the *mens rea* of recklessness.  He asserts that his murder conviction is likewise therefore invalid, as it required that the death occur as a proximate result of the predicate felony or, in this case, child endangering.  He complains that *State v. Colon*, 118 Ohio St.3d 26 (2008)("*Colon I*")(overruled by *State v. Horner*, 126 Ohio St.3d 466 (2010)), which required that an indictment contain the *mens rea* of the offense or result in "structural" error should have been the rule of law applied in his case, but the Court of Appeals improperly *Horner*, 126 Ohio St.3d at 466, decided on August 27, 2010, and after commission of the offense charged, which

occurred on August 1, 2010.[1]  In *Horner,* the Ohio Supreme Court reversed both *Colon I* and *Colon II*, holding that "when an indictment fails to charge a *mens rea* element of the crime, but tracks the language of the criminal statute describing the offense, the indictment provides the defendant with adequate notice of the charges against him and is, therefore, not defective."  The result, petitioner argues, violates due process and the Ex Post Facto Clause.  He additionally contends that, because Ohio provides for the right to an indictment by a grand jury, under the Supremacy Clause, it must comply with federal law.  According to petitioner the charging document in this case cannot stand constitutional muster, because it failed to track the "operative facts" or elements required to establish the crime of child endangering.  *Reply,* PageID #1861.

Petitioner's arguments is not persuasive.  "To pass constitutional muster, an indictment must meet a two-prong test: first, the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *United States v. Martinez,* 981 F.2d 867, 872 (6th Cir. 1992).  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.' " *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1881)).  "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (citing *Mira v. Marshall*, 806 F.2d 636, 639 (6th

---

[1]  The Supreme Court modified its holding in *Colon I* in *State v. Colon*, 118 Ohio St.2d 204 (2008)(*Colon* II), holding that plain error review applies where the defendant fails to object to the indictment at trial, rather than applying the per se prejudice of structural error review.

Cir.1986)). The Constitution only requires that whatever charging method a state employs, the state must give a defendant fair notice of the charges to permit adequate preparation of his defense, so "that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged." *Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir.1988); *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Combs v. Tennessee,* 438 F.2d 695, 698 (6th Cir.1976).

Such were the circumstances here.  The indictment specifically identified the type of crime petitioner allegedly committed (murder and child endangering), the date of the crime, and the name of the alleged victim. That information was sufficient to allow him to prepare a defense.  The fact that the indictment did not specify a mens rea requirement—just as the underlying Ohio statute does not—does not mean that petitioner was unaware that the state had to prove mens rea, or unaware what mens rea applied to these crimes, nor does petitioner argue otherwise. Thus, the constitutional requirements of fair notice were satisfied. *See Jordan v. Sheets*, 2012 WL 553091 (S.D.Ohio Feb.21, 2012) ("The charges of aggravated burglary and aggravated robbery in petitioner's indictment contain all the essential elements of the offenses. The indictment also sets forth factual information regarding the time of the offense and the victims. The indictment provided petitioner of fair notice of the charges against him and meets the requisite constitutional standard"); *see also Williams v. Haviland*, 467 F.3d 527, 535–36 (6th Cir. 2006) ("Although the exact mens rea requirements were not stated in the indictment, the indictment precisely stated the offenses with which Williams was charged so that there could be no confusion on this point").

Moreover, the trial court plainly instructed the jury that, in order to find petitioner guilty of the crime of child endangering, it must find beyond a reasonable doubt that the defendant

recklessly abused the child. Doc. No. 9, *Trial Transcript*, Vol. III, PageID #1837. Courts have held that, under similar circumstances, no constitutional error relating to fair notice of the charges has occurred. *See, e.g., Alston v. Voorhies*, 2008 WL 8101945, *21 (N.D. Ohio July 24, 2008) ("Although the indictment did not charge the *mens rea* element of robbery, the jury instructions included a *mens rea*. Thus, the jury considered the defendant's *mens rea* as an element of the offense"), adopted and affirmed 2010 WL 3895069 (N.D. Ohio Sept.30, 2010).

Petitioner asserts that his convictions violate the Ex Post Facto Clause. Although respondent does not raise the issue, petitioner did not preserve this claim for federal habeas corpus review and it is waived.

As a general rule, procedural default is an affirmative defense that must be raised by the State or it will be waived. *Trest v. Cain*, 522 U.S. 87, 89 (1997) (State's failure to raise procedural default normally constitutes waiver of the default); *Gray v. Netherland*, 518 U.S. 152, 166 (1996) (same). A federal habeas court, however, may *sua sponte* raise a procedural default not expressly raised by the state particularly where, as here, petitioner has the opportunity to respond to the procedural default in any objections he files. *See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005); *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000); *see also Heft v. Warden, Madison Correctional Institution,* No. 2:11-CV-103, 2012 WL 1902467, at *19 n. 10 (S.D. Ohio May 25, 2012).

Petitioner never argued in his appeal to the Ohio Supreme Court that his convictions violated the Ex Post Facto Clause, or that the state appellate court did so when it applied *Horner* in rejecting petitioner's appeal. Specifically, he argued that the indictment, based on an incident that occurred prior to *Horner,* must include the *mens rea,* and could not be amended to include

11

any missing element.  *Exhibit 15 to Return of Writ,* PageID #990.  Petitioner argued that state

law required the indictment to include a *mens rea* at the time of his conviction, and that such law

must be applied to his appeal.  *See id.*  He complained that the prosecutor improperly relied on a

"strict liability theory" contrary to applicable state law.  He did not, however, phrase a claim in

terms of a violation of the Ex Post Facto Clause, nor did he refer to any state or federal cases

relying on this federal constitutional issue.[2]  His reference to the Fifth, Sixth, and Fourteenth

Amendments, and his citation to *Russell v. United States*, 369 U.S. 749 (1962)(addressing the

issue of the sufficiency of an indictment), could not have alerted the state courts to a claim under

the Ex Post Facto Clause.

In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly

present the substance of each constitutional claim to the state courts as a federal constitutional

claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971).

Although the fair presentment requirement is a rule of comity, not jurisdiction, *see Castille v.

Peoples,* 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999), it is

rooted in principles of comity and federalism designed to allow state courts the opportunity to

correct the State's alleged violation of a federal constitutional right that threatens to invalidate a

state criminal judgment. In the Sixth Circuit, a petitioner can satisfy the fair presentment

requirement in any one of four ways: (1) reliance upon federal cases employing constitutional

---

[2]

> The Ex Post Facto Clause prohibits a state from passing a law that (1) criminalizes an action done before the law was passed, which was innocent when done, (2) " 'aggravates a crime, or makes it greater than it was, when committed,' " (3) " 'changes the punishment' " to inflict greater punishment than the law provided when the crime was committed, or (4) " 'alters the legal rules of evidence' " so that less or different testimony is required than at the time the offense was committed. *Rogers v. Tennessee*, 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (*quoting Calder v. Bull,* 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798)).

*Hooks v. Sheets*, 603 F.3d 316, 2010 WL 1655578 (6th Cir. April 27, 2010).

analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of a constitutional right, such as the right to a fair trial or to due process, are insufficient to satisfy the "fair presentment" requirement. *Id*.

The record fails to reflect that petitioner can establish cause for failing to present a claim under the Ex Post Facto Clause to the Ohio Supreme Court.  He therefore has waived this claim for review.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/Mark R. Abel
United States Magistrate Judge